IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02221-RBJ-MEH

EDMOND WALKER,

      Plaintiff,

v.

PATRICK FIRMAN,
SHUDER,
BLAINE,
ROMERO, and
MOZATTI,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Defendants seek to dismiss Plaintiff Edmond Walker's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or in the alternative, an order granting summary judgment in their favor. The Honorable R. Brooke Jackson referred Defendants' motion to this Court for report and recommendation. Defendants contend that all but two of Mr. Walker's causes of action fail to state a claim. Furthermore, Defendants argue Mr. Walker failed to exhaust his available administrative remedies for each of the incidents underlying his claims. As such, Defendants request that Mr. Walker's Amended Complaint be dismissed in its entirety.

      The Court recommends converting Defendants' motion to one for summary judgment and finding that Mr. Walker failed to exhaust his administrative remedies for all but one incident underlying his due process claim and one allegation giving rise to his retaliation claim. Proceeding to the merits of these two causes of action only, the Court finds that Mr. Walker fails to state a due

process claim. Next, the Court finds that Mr. Walker's allegations, taken as true, plausibly state a claim for First Amendment retaliation. However, because Mr. Walker does not plead a physical injury, the Court recommends dismissing his claim for compensatory damages. As such, the Court respectfully recommends granting in part and denying in part Defendants' motion.

## **BACKGROUND**

Mr. Walker is a pre-trial detainee confined at the Denver County Jail. Am. Compl. 2, ECF No. 37; Defs.' Mot. to Dismiss 2, ECF No. 61. Mr. Walker initiated this case on September 1, 2016, alleging various constitutional violations arising from incidents occurring during his incarceration. Compl., ECF No. 1. Before Defendants were served with Mr. Walker's Complaint, the Honorable Gordon P. Gallagher directed Mr. Walker to file an amended complaint on two separate occasions. ECF Nos. 19, 31.

Mr. Walker filed the operative Amended Complaint in response to Judge Gallagher's second order. Mr. Walker first asserts a claim for denial of procedural due process. *Id.* at 6. According to Mr. Walker, Defendants violated his due process rights when they placed him in disciplinary segregation without any procedure on five separate occasions. *Id.* at 4, 10–11. Mr. Walker's second claim alleges Defendants retaliated against him for filing lawsuits and administrative grievances. *Id.* at 5. Specifically, Mr. Walker contends: (1) Captain Romero placed him in a cell with feces on the floor and walls; (2) Sheriff Blaine punched him in the back and subsequently denied him medical attention and free time; (3) Captain Romero had him assaulted by other inmates; (4) Sheriff Simon "banged" on his cell door with a flashlight; (5) Sheriff Shuder destroyed his property; and (6) Sheriff Mozatti put him in disciplinary segregation, had his free time revoked, and made continuous death threats. *Id.* at 7, 12–14. Lastly, Mr. Walker asserts a claim for prosecutorial misconduct arising out

of the District Attorney's alleged falsification of evidence.  *Id.* at 8.

On May 19, 2017, the Honorable Lewis T. Babcock issued an order dismissing Mr. Walker's Amended Complaint in part.  ECF No. 41.  Judge Babcock dismissed Mr. Walker's due process claim as to Defendants Denver, Blaine, Simon, Shuder, and Nathaniel for failure to allege personal participation.  *Id.* at 4.  Next, Judge Babcock found that Mr. Walker did not state a retaliation claim against Defendants Denver, Simon, and Nathaniel.  Mr. Walker did not allege Denver and Nathaniel took any retaliatory conduct, and the assertion that Sheriff Simon "banged" on Mr. Walker's cell door is not "an adverse action sufficient to chill a person of ordinary firmness from exercising his protected rights."  *Id.* at 5.  Furthermore, Judge Babcock dismissed Mr. Walker's malicious prosecution claim as barred by absolute immunity.  *Id.* at 5–6.  However, the order declined to address the merits of the due process claim against Firman, Romero, and Mozatti and the retaliation claim against Firman, Romero, Blaine, Shuder, and Mozatti.  *Id.* at 3–4.  Judge Babcock then assigned the case to a District Judge and a Magistrate Judge pursuant to D.C. Colo. LCivR 8.1(c) and D.C. Colo. LCivR 40.1.  *Id.*

After the United States Marshals Service served the remaining Defendants with the Amended Complaint, Defendants filed the present Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.  ECF No. 61.  Defendants first argue Mr. Walker does not allege sufficient facts to demonstrate that his placement in disciplinary segregation deprived him of a liberty interest. *Id.* at 7–9.  Next, Defendants contend that to the extent Mr. Walker asserts a conditions of confinement claim, the Amended Complaint does not establish that Defendants' actions were sufficiently serious.  *Id.* at 9–13.  Defendants also assert that Mr. Walker has not stated a supervisory liability claim against Sheriff Firman.  Furthermore, Defendants contend that even if Mr. Walker

states a claim, the Prison Litigation Reform Act ("PLRA") precludes him from receiving compensatory damages, because he does not allege a physical injury. *Id.* at 15.

In the alternative, Defendants argue the Court should convert the present motion to one for summary judgment and dismiss this case for failure to comply with the PLRA's exhaustion requirement. *Id.* at 16–18. In support of their argument, Defendants attach the declaration of Bryan Moore—an inmate management major at the Denver Sheriff Department. Decl. of Bryan Moore ¶¶ 2–3, ECF No. 61-1. Major Moore is responsible for coordinating, directing, monitoring, and reviewing inmate grievances. *Id.* ¶ 4. Major Moore's declaration explains the grievance procedure at the Denver Sheriff Department and states that Mr. Walker did not complete the full process for many of the incidents giving rise to his claims. *Id.* ¶¶ 5–14. Because the PLRA's exhaustion requirement is mandatory, Defendants contend the Court should dismiss this case for failure to exhaust. Defs.' Mot. to Dismiss 18.

Mr. Walker filed two documents in response to Defendants' motion. First, Mr. Walker submitted a Sworn Affidavit, which generally restates the allegations Mr. Walker made in his Amended Complaint. ECF No. 69. Second, Mr. Walker filed a Motion to Deny Defendants' Motion. ECF No. 72. Mr. Walker argues the Court should excuse his failure to exhaust, because Defendants threatened him with physical force. *Id.* at 1–2. Further, Mr. Walker contends that he need not plead a physical injury to collect compensatory damages for his First Amendment retaliation claim. *Id.* at 4.

## LEGAL STANDARDS

### I.     Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–80. Second, the court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## II.     Fed. R. Civ. P. 56

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits

show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."); *Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that

evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsi, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## III.    Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a pro se plaintiff's pleadings "liberally" and hold the pleadings "to a less stringent standard than formal pleadings filed by lawyers." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). "[The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Id.* (citing *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean:

> [I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) ("[W]e will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded.").

## ANALYSIS

The Court first addresses Mr. Walker's allegations of incidents occurring outside of the statue of limitations. Because Defendants' exhaustion argument would result in a dismissal of Mr.

Walker's claims without prejudice, the Court next addresses whether Mr. Walker exhausted the administrative remedies available to him. The Court recommends finding that Mr. Walker failed to follow the Denver Sheriff Department's grievance procedure for all but two of Mr. Walker's claims. Moving to the merits of the two claims for which Defendants have not demonstrated exhaustion, the Court first recommends finding Mr. Walker fails to allege a due process claim. Then, the Court recommends finding that Mr. Walker pleads facts supporting his retaliation cause of action. However, because Mr. Walker does not allege a physical injury accompanying the retaliation, the Court recommends dismissing Mr. Walker's claim for compensatory damages.

## I.  Incident Occurring in June 2013

The Court recommends finding that Mr. Walker's allegations of incidents occurring prior to September 1, 2014 are barred by the two-year statute of limitations. Mr. Walker alleges that on June 13, 2013, Sheriff Blaine punched him in the back and subsequently denied him medical attention in retaliation for filing grievances. Am. Compl. 12. Accordingly, Mr. Walker asserts a First Amendment retaliation claim under 42 U.S.C. § 1983. *Id.* "State statute of limitations applicable to general personal injury claims supply the limitations period for § 1983 claims . . . ." *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999). Colorado applies a two-year statute of limitations to general tort actions. Colo. Rev. Stat. § 13-80-102(1)(a) (2017). As such, "the statute of limitations for § 1983 actions brought in Colorado is two years from the time the cause of action accrued." *Fogle v. Pierson*, 435 F.3d 1252 (10th Cir. 2006). Therefore, the statute of limitations on Mr. Walker's 2013 allegations expired on June 13, 2015. Because Mr. Walker filed this case on September 1, 2016, these claims are barred by the two-year statute of limitations. Accordingly, the Court recommends dismissing Mr. Walker's retaliation claim to the

extent it relies on incidents occurring prior to September 1, 2014.

## II.     Exhaustion

The Court will first address whether it is appropriate to convert Defendants' motion to one for summary judgment.  Then, the Court will address the incidents Mr. Walker has not exhausted.  Finally, the Court will discuss the allegations for which Defendants have not demonstrated a failure to exhaust.

The Court finds it appropriate to convert Defendants' motion to one for summary judgment for the sole purpose of analyzing Plaintiffs' failure to exhaust administrative remedies.  Because exhaustion under the PLRA is an affirmative defense, courts regularly convert motions to dismiss to motions for summary judgment to analyze exhaustion.  *See Culp v. Williams*, No. 10-cv-00886-CMA-CBS, 2011 WL 1597953, at *2 (D. Colo. Apr. 6, 2011) (stating that the law of the Tenth Circuit fully supports converting a motion to dismiss to a motion for summary judgment to determine whether the plaintiff exhausted his claims); *see also Radick v. Ippolito*, No. 10-cv-02504-DME-KLM, 2012 WL 4481406, at *5 (D. Colo. Aug. 13, 2012) ("If the evidence produced by the parties shows that there are no genuine factual issues preventing a finding that the plaintiff did not properly exhaust his available administrative remedies, the complaint must be dismissed without prejudice.").  Indeed, the Tenth Circuit has stated that "only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).  Furthermore, Mr. Walker had notice that the Court might convert the motion, because the motion attaches matters outside the complaint and specifically asks the Court to convert it.  *See Wheeler v. Hurdman*, 825 F.2d 257, 260 (10th Cir. 1987) ("[W]hen a party submits material

beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motion as a Rule 56 motion."). Therefore, for the sole purpose of deciding Defendants' exhaustion defense, the Court finds it proper to analyze Defendants' motion under Federal Rule of Civil Procedure 56.

Pursuant to the PLRA, prisoners must fully exhaust all available administrative remedies before bringing suit. 42 U.S.C. § 1997e(a). "Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). To exhaust available remedies, a prisoner "must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 922 (2007) (citation omitted) (quoting *Woodford*, 548 U.S. at 88). Importantly, when a prison grievance process requires multiple levels of appeals, it is insufficient that the prisoner file a grievance; "an inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002); *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) ("[A]n inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure."). "[T]he burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant." *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

Here, the Denver Sheriff Department maintains an inmate handbook that explains in detail the Denver County Jail's grievance procedure. *See* ECF No. 61-1. First, prisoners must complete a grievance form. *Id.* at 20. If the jail staff's answer does not resolve the inmate's grievance, the prisoner may then file an appeal to the division chief. *Id.* If the prisoner is not satisfied with the

result of the initial appeal, he may then file an appeal with the sheriff. *Id.* "The Sheriff will make the final resolution and will provide a written, dated response within 10 working days of receipt of that appeal." *Id.*

The Court recommends finding that for all but two of Mr. Walker's alleged incidents Defendants have met their burden of demonstrating Mr. Walker's failure to exhaust. Indeed, Defendants' uncontroverted declaration establishes that Mr. Walker either did not file a grievance or did not fully appeal the grievance for all the allegations underlying Mr. Walker's claims with the exception of one incident giving rise to the due process claim and once incident underlying the retaliation claim.

A.     Unexhausted Claims

The Court first addresses the unexhausted incidents underlying Mr. Walker's due process claim. Mr. Walker alleges that on December 11, 2015, he was taken to disciplinary segregation for five days without any process. Am. Compl. 6. However, Major Moore's review of the grievances Mr. Walker filed revealed that Mr. Walker did not submit a grievance related to this incident. Decl. of Bryan Moore ¶ 10(a), ECF No. 61-1. Mr. Walker next alleges that he was taken to disciplinary segregation for eight days without any process on January 11, 2016. Am. Compl. 6. Although Mr. Walker filed a grievance for this incident, he did not appeal the grievance to the division chief. Decl of Bryan Moore ¶¶ 11, 14. Mr. Walker filed three grievances related to his allegation that he was taken to disciplinary segregation on July 11, 2016. Am. Compl. 10. However, Mr. Walker did not appeal two of these grievances to the division chief, and he failed to appeal the remaining grievance to the sheriff. Decl of Bryan Moore ¶¶ 11, 14. Lastly, Mr. Walker did not appeal to the sheriff his grievance related to a September 24, 2016 incident when he was allegedly taken to disciplinary

segregation for three months.[1]  *Id.*  Because Mr. Walker does not present any evidence rebutting Major Moore's declaration, Defendants have met their burden of demonstrating that Mr. Walker failed to fully exhaust his administrative remedies for the preceding incidents.

Regarding Mr. Walker's retaliation claim, Mr. Walker contends that on December 11, 2015, he was placed in a cell that smelled of urine and had feces on the wall in retaliation for filing a lawsuit.  Am. Compl. 7.  However, Major Moore's undisputed declaration states that Mr. Walker did not file a grievance for this incident.  Decl. of Bryan Moore ¶ 10(a).  Although Mr. Walker complained of a similar incident that occurred in 2016, Mr. Walker did not appeal this grievance to the division chief.  *Id.* ¶¶ 10(a), 13.  Mr. Walker next alleges that on August 1, 2016, Sheriff Blaine revoked his free time and legal materials in retaliation for filing grievances.  Am. Compl. 12.  Similar to his December 2015 allegation, Mr. Walker did not file a grievance related to this incident.  Decl. of Bryan Moore ¶ 10(c).  Although Mr. Walker filed a grievance for a substantially similar event that allegedly occurred on July 26, 2016, he did not appeal it to the division chief.  *Id.* ¶ 13.  Furthermore, Mr. Walker did not file grievances related to his allegations that Captain Romero had other inmates assault Mr. Walker and his contention that Sheriff Shuder destroyed his property in retaliation for filing grievances.  *Id.* ¶¶ 10(d)–10(e).  As such, Defendants have met their burden of demonstrating that Mr. Walker failed to exhaust his administrative remedies for each of these allegations.

Mr. Walker asks the Court to excuse the exhaustion requirement, because Defendants

---

[1] Although Mr. Walker alleges this incident occurred on September 28, 2016, it is clear from the content of the grievance that the alleged conduct took place on September 24, 2016.  Indeed, Mr. Walker indicated in the grievance that he began a three-month sentence in disciplinary segregation on September 24, 2016.

threatened and physically assaulted him for continuing to pursue the grievances. Resp. to Mot. to Dismiss 2, ECF No. 72. Mr. Walker is correct that a prisoner is required to exhaust only available remedies, and "where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little*, 607 F.3d at 1250; *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011) ("[W]e have obligated district courts 'to ensure that any defects in exhaustion [are] not procured from the action or inaction of prison officials.'" (second alteration in original) (quoting *Aguilar-Avellaveda*, 478 F.3d at 1225)). One manner in which prison officials can thwart a prisoner's efforts to exhaust his claims is through threats or intimidation. *Tuckel*, 660 F.3d at 1252. Indeed, if the use of an administrative remedy "will result in serious retaliation and bodily harm, . . . that process can no longer be said to be 'available.'" *Id.* at 1253–54. When an inmate claims that administrative remedies were unavailable due to threats or intimidation, the Tenth Circuit requires that the plaintiff show: "(1) that the threat or intimidation actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the prison administrative process; and (2) that the threat or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance . . . ."[2] *Id.* at 1254.

Here, the undisputed evidence demonstrates that Mr. Walker was not actually deterred from filing grievances. Mr. Walker has submitted seventeen grievances since he filed this case. Supplemental Decl. of Bryan Moore ¶ 6, ECF No. 75-1. Outside of the conclusory statements in his

---

[2] The requirement that a plaintiff make both a subjective and objective showing differentiates excuse of exhaustion from the merits of a First Amendment retaliation claim, where courts require only a showing that a reasonable inmate would be deterred from lodging a grievance. *See Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001) (listing the elements for a First Amendment retaliation claim).

response brief, Mr. Walker has presented no evidence that the threats actually deterred him from lodging grievances. Because the Court finds that Defendants' alleged threats did not deter Mr. Walker from using the administrative grievance process, the Court recommends refusing to excuse Mr. Walker's failure to exhaust. *See Rouse v. Baca*, No. 11-0433 MV/CG, 2012 WL 4498866, at *7 (D.N.M. Sept. 25, 2012) ("Considering that Plaintiff continued to file grievances and to write numerous letters in spite of the purported threats, the Court finds that Plaintiff was not subjectively deterred from utilizing the grievance procedure at [the jail].").

In sum, the Court recommends finding that Mr. Walker failed to exhaust his claims to the extent they relate to the eight incidents discussed above. As such, the Court recommends dismissing these claims without prejudice to provide Mr. Walker the opportunity to exhaust.[3] *See Fitzgerald v. Corrs. Corp. of Am.*, 403 F.3d 1134, 1139 (10th Cir. 2005) ("[F]ailure to exhaust administrative remedies is often a temporary, curable, procedural flaw. If the time permitted for pursuing administrative remedies has not expired, a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit.").

B.     Claims for Which Defendants Have Not Demonstrated Failure to Exhaust

Defendants have not submitted evidence demonstrating Mr. Walker's failure to exhaust for two of the allegations underlying Mr. Walker's claims. First, Defendants do not meet their burden regarding Mr. Walker's allegation that he was placed in disciplinary segregation for twenty days without any process. *See* Am. Compl. 6. Major Moore's declaration does not reference this incident, and Defendants produce no other evidence demonstrating that Mr. Walker failed to exhaust

_____

[3] Because the Court holds that Mr. Walker failed to exhaust all claims against Romero, Blaine, and Shuder, the Court need not address the merits of the claims against these individuals.

his remedies related to this event. Similarly, Defendants present no evidence proving Mr. Walker failed to exhaust his claim that Sheriff Mozatti placed him in disciplinary segregation, took away his free time, and made death threats because of Mr. Walker's refusal to stop filing grievances. *See* Am. Compl. 14. Because Major Moore's declaration does not mention this incident, Defendants have not met their burden of establishing their affirmative defense. As such, the Court will analyze the merits of Mr. Walker's due process and retaliation claims only as they relate to these incidents.

## III. The Two Claims for Which Defendants Have Not Proven a Failure to Exhaust

### A. Due Process Claim

Mr. Walker alleges that his due process rights were violated on January 19, 2016, when he was placed in disciplinary segregation for twenty days "and was not given any process at all . . . ." Am. Compl. 6. Because Mr. Walker does not claim this deprived him of any property, the Court infers he intends to allege only the deprivation of a liberty interest.

A prisoner, whether pre- or post-trial, does not automatically possess a liberty interest in being free from disciplinary segregation. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Lopez v. LeMaster*, 172 F.3d 756, 759–60 n.2 (10th Cir. 1999) (stating that the due process analysis for pre- and post-trial detainees is identical). Instead, the procedural protections that accompany the due process clause apply only when placement in disciplinary segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Also relevant to this analysis is whether the confinement will inevitably affect the duration of the prisoner's sentence. *Id.* at 487; *Gandy v. Ortiz*, 122 F. App'x 421, 423 (10th Cir. 2005) ("In addition, the imposition of disciplinary segregation that does not itself inevitably affect the duration of the prisoner's sentence does not implicate a liberty interest entitled to procedural due

process protection.").

The Court recommends holding that Mr. Walker fails to state a due process violation.[4] In *Sandin*, the Supreme Court held that thirty days in disciplinary confinement did not constitute atypical or significant hardship, especially because the confinement did not affect the plaintiff's sentence. 515 U.S. at 487. Here, Mr. Walker alleges his disciplinary segregation beginning on January 19, 2016 lasted only twenty days. Additionally, similar to *Sandin*, Mr. Walker does not allege other facts demonstrating that this twenty-day segregation imposed an atypical hardship or affected the length of his sentence. As such, Mr. Walker has not pleaded that his confinement beginning on January 19, 2016 deprived him of a protected liberty interest, and the Court recommends dismissing this claim with prejudice.[5]

B.      Retaliation Claim

Mr. Walker asserts a First Amendment retaliation claim arising out of an interaction he had with Defendant Sheriff Mozatti. Mr. Walker alleges Sheriff Mozatti told him that if he continues to file grievances, Sheriff Mozatti would place him in disciplinary segregation. Am. Compl. 14. After Mr. Walker told Sheriff Mozatti that he planned to pursue his grievances, Sheriff Mozatti allegedly took him to disciplinary segregation, had his free time taken away, and made continuous

---

[4] Although Mr. Walker does not explicitly state that he pleads a conditions of confinement claim, some of Mr. Walker's allegations discuss the inadequate conditions of his confinement. However, Mr. Walker does not allege that the conditions of his January 19, 2016 segregation were beyond those inherent in ordinary prison life. *See Darris v. Mazzaie*, No. 12-cv-01559-REB-CBS, 2013 WL 5291940, at *12 (D. Colo. Sept. 17, 2013) (holding that the plaintiff's confinement in disciplinary segregation for forty and fifty days was not a condition of confinement "atypical to the ordinary incidents of prison life").

[5] Because the Court holds that Mr. Walker does not plead the deprivation of a liberty interest, the Court need not analyze Defendants' argument that Mr. Walker fails to assert a supervisory liability claim.

death threats to him.  *Id.*

> To allege a First Amendment retaliation claim, a plaintiff must assert:
>
> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007); *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010).

The Court holds that Mr. Walker states a retaliation claim as to the making of death threats and his placement in disciplinary segregation, but not as to the restriction of his free time. Regarding the restrictions on Mr. Walker's recreation time, the Court does not find this would chill an inmate of ordinary firmness from pursuing grievances.  *See Rocha v. Zavaras*, 443 F. App'x 316, 318–20 (10th Cir. 2011) (holding that restricting an inmate's recreation activities would not chill a person of ordinary firmness from continuing to file grievances).  Therefore, the Court recommends dismissing this claim to the extent it is based on recreation time.

However, the Court finds that Mr. Walker states a claim as to his placement in disciplinary segregation and the alleged death threats.  Mr. Walker contends he was engaged in the protected activity of filing grievances. Am. Compl. 14.  Second, liberally construing Mr. Walker's allegations, the Court finds that placement in disciplinary segregation and making continuous death threats would deter a reasonable inmate from continuing to file grievances, especially given the close temporal proximity between Sheriff Mozatti's threat and Mr. Walker's removal from general population.  *See Montoya v. Bd. of Cty. Comm'rs*, 506 F. Supp. 2d 434, 448 (D. Colo. 2007) ("[C]ommon sense leads to the conclusion that being taken out of the general population and placed

in twenty-three-hour-per-day confinement in retaliation for complaining to the press would deter a reasonable inmate from exercising that First Amendment right in the future."); *see also Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013) ("[A] reasonable jury could find that threats of death, issued by a correctional officer tasked with guarding a prisoner's segregated cell, would chill a prisoner of ordinary firmness from engaging in the prison grievance process.").  Third, Mr. Walker alleges that Sheriff Mozatti's actions were substantially motivated by Mr. Walker's grievances.  Sheriff Mozatti allegedly told Mr. Walker that he would  punish Mr. Walker if he continued to file grievances.  Am. Compl. 14.  Sheriff Mozatti placed Mr. Walker in disciplinary segregation and began making death threats within twenty minutes of Mr. Walker informing Sheriff Mozatti that he planned to pursue his grievances.

Furthermore, the Court recommends finding that, as alleged, Mr. Walker's right was clearly established.  "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains."  *Dodds v. Richardson*, 614 F.3d 1185, 1206 (10th Cir. 2010) (quoting *Harman v. Pollock*, 586 F.3d 1254, 1261 (10th Cir. 2009)).  As for the retaliatory placement in disciplinary segregation, the Tenth Circuit has found that an inmate's placement in segregation for several months is a sufficiently adverse action to survive summary judgment on a First Amendment claim.  *See Smith v. Maschner*, 899 F.2d 940, 949 (10th Cir. 1990).  Although Mr. Walker does not explicitly state the amount of time he remained in disciplinary segregation, he alleges he was still in segregation at the time he filed his Amended Complaint in April 2017.  Am. Compl. 10.  Liberally construing these allegations, the Court finds them sufficiently similar to *Smith* to put a reasonable officer on notice that the conduct violated the First Amendment.

It is also clearly established that making death threats in retaliation for protected conduct violates the First Amendment. In *Van Deelen v. Johnson*, the plaintiff claimed the defendants violated his First Amendment rights by threatening to shoot him if he continued to file tax appeals. 497 F.3d 1151, 1157 (10th Cir. 2007). The Tenth Circuit stated that the plaintiff's "allegations of physical and verbal intimidation, including a threat by a deputy sheriff to shoot him if he brought any more tax appeals, would surely suffice under our precedents to chill a person of ordinary firmness from continuing to seek redress . . . ." *Id.* The Court finds *Van Deelen* clearly establishes that making death threats to keep an individual from engaging in protected activity violates that individual's First Amendment rights. Furthermore, the weight of authority from other jurisdictions supports the notion that the alleged violation was clearly established. *See Santiago*, 707 F.3d at 992 (holding that death threats issued by a correctional officer would chill a prisoner of ordinary fitness from continuing to file grievances); *Schleig v. Borough of Nazareth*, No. 16-3499, 2017 WL 2591408, at *4 (3d Cir. June 15, 2017) ("In the few cases in which government officials have made death threats in response to constitutionally protected activity, no one has tried to claim that the offending official's behavior is something other than unlawful retaliation."). Accordingly, accepting Mr. Walker's allegations as true, the Court recommends finding that Sheriff Mozatti is not entitled to qualified immunity.

Although Mr. Walker states a claim for relief, the PLRA bars Mr. Walker's claim for compensatory damages, because he does not allege a physical injury. The PLRA provides, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C. § 1997e(e). Here, Mr. Walker does not plead that he suffered a physical

injury as a result of Sheriff Mozatti's retaliatory conduct. Instead of attempting to show a physical injury in his response, Mr. Walker states that Section 1997e(e)'s physical injury requirement does not apply to First Amendment retaliation claims. Resp. to Mot. to Dismiss 4, ECF No. 72. In support of his proposition, Mr. Walker cites cases from the Ninth, Seventh, and Second Circuits. *Id.* However, the Tenth Circuit has expressly rejected these holdings. In *Searles v. Van Bebber*, the court stated:

> We disagree with the reasoning in *Mason* and *Amaker* which would make application of the statute contingent on the nature of the plaintiff's allegedly infringed rights. We are persuaded instead that section 1997e(e) should be held to apply in the instant case because of its plain language. The plain language of the statute does not permit alteration of its clear damages restrictions on the basis of the underlying rights being asserted. The underlying substantive violation, like Canell's First Amendment wrong, should not be divorced from the resulting injury, such as "mental or emotional injury," thus avoiding the clear mandate of § 1997e(e). The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional.

251 F.3d 869, 876 (10th Cir. 2001) (footnote call number omitted). Accordingly, the Court recommends limiting the remedies for Mr. Walker's retaliation claim to nominal damages and declaratory or injunctive relief. *See Clifton v. Eubank*, 418 F. Supp. 2d 1243, 1253 (D. Colo. 2006) ("[W]hile claims for damages are precluded by the PLRA, other forms of relief remain available.").

## CONCLUSION

In sum, the Court first recommends finding that Mr. Walker's claims based on actions occurring prior to September 2014 are bared by the statute of limitations. Next, to the extent Mr. Walker's claims are based on the eight incidents articulated in Section II(A) of this Report and Recommendation, the Court recommends dismissing the claims without prejudice for failure to exhaust. However, the Court recommends finding that Defendants do not establish a failure to exhaust regarding two incidents Mr. Walker alleges—one underlying the due process claim and the

other supporting the retaliation claim.  The Court recommends finding that Mr. Walker fails to state

a due process claim, because he does not allege that Defendants deprived him of a protected liberty

interest.  As for the retaliation claim, the Court recommends holding that although Mr. Walker

asserts a claim based on his placement in disciplinary segregation and death threats Sheriff Mozatti

made to him, his failure to plead a physical injury precludes him from recovering compensatory

damages.  Accordingly, the Court respectfully recommends that Defendants' Motion to Partially

Dismiss Second Amended Complaint or in the Alternative Motion for Summary Judgment [filed

August 3, 2017; ECF No. 61] be **granted in part and denied in part**.[6]

Entered and dated at Denver, Colorado, this 17th day of October, 2017.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge

---

[6] Be advised that all parties shall have fourteen days after service to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).