IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-02221-RBJ-MEH

EDMOND WALKER,

    Plaintiff,

v.

DEPUTY TYLER MAZOTTI,

    Defendant.

---

**ORDER on MOTION FOR SUMMARY JUDGMENT**

---

**BACKGROUND**

Edmond Walker filed this lawsuit *pro se* on September 1, 2016 when he was an inmate in the Denver jail. He alleged that several officers in the jail had violated his civil rights in retaliation for his pattern of filing multiple grievances and lawsuits against jail personnel. ECF No. 1. He was granted leave to proceed *in forma pauperis.* ECF No. 18. On January 20, 2017 Mr. Walker filed an amended complaint. ECF No. 27. He filed another amended complaint on April 17, 2017. ECF No. 37.

On May 19, 2017 Judge Babcock dismissed several of Mr. Walker's claims as legally frivolous. ECF No. 41. On August 3, 2017 the five defendants who remained in the case filed a motion seeking partial dismissal or summary judgment. ECF No. 61. The Court referred the motion to United States Magistrate Judge Michael E. Hegarty for a report and recommendation. On October 17, 2017 Judge Hegarty, in a lengthy written report, recommended that the motion to dismiss be converted to a motion for summary judgment; that certain claims be dismissed as

1

barred by the statute of limitations; and that most of the remaining claims be dismissed without prejudice for failure to exhaust administrative remedies. ECF No. 90 at 8-14.

However, Judge Hegarty found that defendants had not submitted evidence demonstrating that Mr. Walker had failed to exhaust his claims against Deputy Tyler Mazotti. In those claims Mr. Walker alleged that Deputy Mazotti had placed him in disciplinary segregation, taken away free time, and made death threats against him in retaliation for his refusal to stop filing grievances. *Id.* at 14-15. He further found that Mr. Walker had stated a viable First Amendment claim against defendant Mazotti arising from the alleged disciplinary segregation and death threats but not the alleged restriction of his free time. *Id.* at 17-19. His remedy, however, could not include compensatory damages because Mr. Walker had not shown that he had sustained any physical injury. *Id.* at 19-20.

On December 13, 2017, following a *de novo* review, this Court accepted and adopted Judge Hegarty's recommendation and granted summary judgment dismissing claims arising from incidents predating September 1, 2014 with prejudice; dismissing all remaining claims without prejudice with the exception of First Amendment claims against Deputy Mazotti alleging retaliation by placement in disciplinary segregation and death threats; restricting Mr. Walker's remedies as to those claims to nominal damages of $1.00, punitive damages and injunctive relief; and denying several other motions filed by Mr. Walker that were pending at that time. ECF No. 101.[1]

On January 5, 2018 the Court set the case for a two-day trial commencing August 13, 2018. On May 22, 2018 the defendant moved for a referral to the magistrate judge for a settlement conference, indicating that he was amenable to a negotiated settlement. ECF No. 137.

---

[1] Plaintiff's request for injunctive relief became largely if not entirely moot when he was transferred out of the Denver jail in April or May 2018.

The Court made the referral, and a settlement conference was held, but a settlement was not achieved.

On July 30, 2018 the defendant filed a motion for leave to file another motion for summary judgment, explaining that the defendant had previously been unable to present evidence regarding whether Mr. Walker had exhausted his administrative remedies because, "due to the vast number of his grievances, and the organization of [Denver Sheriff Department's] documents in 2017, it was difficult to locate and track the appeals process for each grievance." ECF No. 159 at 2. The defendant informed the Court that the Department had implemented a new computerized system in 2018 through which a Captain in the Grievance Intervention Response Team had been able to locate and track each of Mr. Walker's grievances and determine that the administrative process had not been exhausted for the claims against Deputy Mazotti. *Id.* The Court granted leave to file the motion for reasons indicated in its order. ECF No. 163.

Nevertheless, the Court held a hearing on the date previously reserved for a Trial Preparation Conference on August 8, 2018. The Court set a new Trial Preparation Conference date, September 28, 2018, and a new trial date, October 9, 2018. ECF No. 163. The Court also set a date for a response to the motion for summary judgment, August 23, 2018. Because the third step of the exhaustion of administrative remedies process was an appeal to the Sheriff himself, the Court directed defendant to obtain an affidavit from the Sheriff stating that he has searched the files and either has or has not received an appeal from Mr. Walker concerning the claims against Deputy Mazotti. *Id.* Mr. Walker filed a response to the motion for summary judgment. ECF No. 175. Defendant filed a reply. ECF No. 176.

**FINDINGS and CONCLUSIONS**

Pursuant to the Prison Litigation Reform Act a prisoner may not bring an action with respect to prison conditions under any federal law unless he first exhausts available administrative remedies. 42 U.S.C. § 1997e(a). "Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Nso,* 548 U.S. 81, 85 (2006).

The administrative remedies applicable to this case are set forth at pages 14 through 17 of the Denver Sheriff Department's Inmate Handbook. ECF No. 160-1 ("Inmate Grievances"). The first step is to submit a grievance in writing on an Inmate Grievance Form. *Id.* at 15.[2] The inmate is entitled to a written response within 10 working days. If the inmate is still aggrieved after receiving the response, he may appeal in writing to the Division Chief, who will provide a written and dated response within 10 working days. *Id.* If the inmate is still aggrieved after receiving the Division Chief's response, he may appeal further by writing a personal letter to the Sheriff of Denver. The Sheriff will make the final resolution in writing within 10 working days of receipt of that appeal. *Id.* In the alternative, the inmate may file a grievance directly with the Denver Sheriff Department's Internal Affairs Bureau or with the Office of the Independent Monitor, either by mail or using the inmate phone. *Id.* at 16.

Mr. Walker submitted two written grievances that contain allegations against Deputy Mazotti. ECF No. 160-2. The first grievance (No. 16 07669) states that on January 18, 2017 Deputy Mazotti told Mr. Walker that if he pursued a federal civil action he would place him in disciplinary segregation. The second grievance (No. 16 07670) states that on January 19, 2017 Deputy Mazotti said that if Mr. Walker pursued his complaints, he would put him in disciplinary segregation and put poison in his food. Mr. Walker stated that he feared for his life and safety around Deputy Mazotti. On January 20, 2017 Mr. Walker filed an amended complaint in this

---

[2] Inmates are encouraged but not required to talk to a housing officer or other line officer or to send a kite to the floor sergeant or supervisor before taking the first step of the formal grievance process. *Id.* at 14.

case that added Deputy Mazotti as a defendant. The two grievances were submitted on January 21, 2017.

According to the Declaration of Harold Minter, who currently serves as a Captain with the Denver Sheriff Department's Grievance Intervention Response Team, Mr. Walker received a response to both grievances. ECF No. 160-3 at ¶9. Neither grievance was sustained. However, Mr. Walker did not complete either step two or step three of the grievance process by appealing the decisions to the Division Chief and then to the Sheriff. *Id.*

As indicated above, as a double-check I directed defense counsel to obtain a declaration from the Sheriff as to whether he did or did not receive a letter from Mr. Walker (the third step of the process). Defendant filed Sheriff Patrick Firman's Declaration on August 17, 2018. ECF No. 169-1. The Sheriff indicated that he has no personal memory of whether Mr. Walker appealed from the denials of either of the grievances concerning Deputy Mazotti, nor does he personally track whether an inmate appeals a particular grievance to him. *Id.* at ¶6. However, he has a standard practice that when he receives a written appeal on a grievance form he forwards it to the Grievance and Incident Review Team, which maintains a record of the appeal. Before April 2018, when the Grievance and Incident Review Team was created, he would have forwarded any such form to the Operations Unit, which maintained a record of the appeal. The Grievance and Incident Review Team now has the records that were formerly in the custody of the Operations Unit. Captain Minter has informed Sheriff Firman that there is no record that Mr. Walker appealed either grievance. *Id.* at ¶7.

Sheriff Firman also states that if the inmate appeal is in a letter format and concerns the conduct of a deputy sheriff, his standard practice is to forward the letter to the Denver Sheriff Department's Internal Affairs Bureau, which maintains a record of the letter. He has been

informed by Sergeant Richard Anderson that Internal Affairs has no record of any letter appealing the denials of the two subject grievances. *Id.* at ¶8. Based on that investigation, Sheriff Firman states that he has concluded that Mr. Walker did not complete the established grievance appeal process for either appeal. *Id.* at ¶9.

The Court finds that the defendant has come forward with evidence suggesting that there is no genuine dispute of fact concerning whether Mr. Walker exhausted his available administrative remedies. I then look at whether Mr. Walker has come forward with evidence indicating that there is a genuine dispute of fact here. In his deposition, taken on July 26, 2018 (before defendant's motion for summary judgment was filed), Mr. Walker testified that he did exhaust his administrative remedies, adding that he had a copy of the complaint he sent to Sheriff Firman. ECF No. 176-4 at 2-3 (depo. pp. 151-52). However, in his response to the motion for summary judgment he did not provide a copy of the purported complaint to the Sheriff. He no longer even asserted that he had completed steps two and three of the grievance process.[3]

Rather, the essence of his response was that there was no "available" administrative remedy because Deputy Mazotti's threats frustrated his efforts to comply with the grievance process. ECF No. 175. He correctly cited *Tuckel v. Grover,* 660 F.3d 1249 (10th Cir. 2011) for the proposition that an administrative remedy is not available to be exhausted if "'prison officials prevent, thwart, or hinder a prisoner's efforts to available himself of [the] administrative remedy.'" *Id.* at 1252 (quoting *Little v. Jones,* 607 F.3d 1245, 1250 (10th Cir. 2010)). The test as

---

[3] I do not rest today's decision on any assessment of Mr. Walker's credibility. However, this excerpt from his deposition testimony was not the first time that his credibility had come into question in this case. After reviewing one of Mr. Walker's several motions for emergency injunctive relief, and his declaration concerning alleged mistreatment that was submitted with the motion, *see* ECF Nos. 109 and 110, I was sufficiently concerned that I directed defense counsel to investigate his allegations. ECF No. 112. An investigation was conducted, and the defense submitted Declarations of Captain Sonya Gillespie-Carter, Deputy Bret Waska, and Major Kelly Bruning. ECF Nos. 119-1, 119-2 and 119-3. Suffice it to say that those Declarations raised sufficient doubt about the credibility of Mr. Walker's allegations that I promptly denied Mr. Walker's motion without a hearing. ECF No. 120.

to whether threats or intimidation render an administrative remedy unavailable is both subjective and objective. First, the inmate must show that he was actually deterred. Second, the court must consider whether a similarly situated inmate would be intimidated in similar circumstances. *Tuckel,* 660 F.3d at 1253-54 (quoting *Hemphill v. State of New York,* 380 F.3d 680, 688 (2d Cir. 2004)).

Here, the facts show that Mr. Walker was not deterred from instituting the grievance process. Despite Deputy Mazotti's alleged threats, Mr. Walker filed the two grievances in which he describes the threats. Mr. Walker does not state in his response to the motion for summary judgment that he feared retaliation or harm from appealing the denial of those grievances. As I noted above, he claimed in his deposition that he did exhaust his administrative remedies including submitting a complaint to the Sheriff. Although it turned out that there is no evidence of that, his testimony belies the notion that he was afraid to appeal.

Nor has Mr. Walker provided anything that suggests that a reasonable inmate in the same or similar circumstances would be deterred from pursuing an appeal. The grievance procedure provides a menu of appellate options, both within and without the Sheriff's Department. I have no basis to find that a reasonable inmate would be afraid to pursue one of those options, particularly after taking the first step by filing a grievance about the conduct. There is no evidence, not even an assertion, that the individuals who held those positions at the time had ever threatened or retaliated against any inmate for filing an appeal of any grievance (or that lower level deputies would be more inclined to retaliate against an inmate who appeals than one who merely exhausts the first step of the process).

Failure to exhaust administrative remedies is an affirmative defense, and the burden of proof is on the defendant. *Tuckel,* 660 F.3d at 1254. The defendant has presented undisputed

evidence that Mr. Walker did not exhaust his administrative remedies. The Court must construe a *pro se* plaintiff's pleadings liberally. *Smith v. United States,* 561 F.3d 1241, 1255 (10th Cir. 2005). However, no matter how liberally I construe Mr. Walker's *pro se* response, he has not met the burden of going forward with any evidence that might establish that he was subjectively deterred from pursuing one of the appellate options by fear that doing so would result in retaliation or harm, or evidence from which it could be reasonably inferred that a reasonable inmate in the same circumstances would have been afraid to pursue steps two and three of the process. Therefore, I conclude that there is no genuine dispute of fact as to his failure to exhaust his administrative remedies, and that the defendant is entitled to judgment as a matter of law.[4]

## ORDER

Because the Court has found that Mr. Walker did not exhaust available administrative remedies, the government's motion for summary judgment, ECF No. 160, is GRANTED. This civil action is dismissed without prejudice. As the prevailing party the defendant is awarded reasonable costs to be taxed by the Clerk pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1. I have also reviewed Mr. Walker's motion for sanctions, ECF No. 166, and the government's response, ECF No. 174. I do not find that any sanctionable conduct

---

[4] Mr. Walker also states in his response that the Court previously indicated that it would not entertain another motion for summary judgment based on failure to exhaust administrative remedies. That is true. The Court said this in a minute order in which it also granted the defendant leave to amend his answer to include failure to exhaust administrative remedies as an affirmative defense. ECF No. 122. The Court's reason was that it had already considered a motion for summary judgment based on failure to exhaust administrative remedies, and it was not eager to embrace another round of motion practice. As I have explained, however, I later granted leave to file a second summary judgment motion based on the government's representation that its new tracking system had enabled it to find evidence that it did not have previously and that would demonstrate conclusively that Mr. Walker had not pursued steps two or three of the grievance process concerning his claims against Deputy Mazotti. I could have elected to wait until trial. However, given that exhaustion of available administrative remedies is mandatory, my judgment was that if failure to exhaust could be demonstrated beyond any genuine dispute, it made sense to consider the evidence now rather than empaneling a jury and conducting a needless trial.

occurred in the government's deposition of Mr. Walker, and therefore, the motion for sanctions is denied.

DATED this 14th day of September, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge